UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARK D. SIEVERS,

          Plaintiff,

v.                                      Case No. 3:26-cv-58-MMH-LLL

DR. VERONA, et al.,

          Defendants.

_____

## **ORDER**

    Plaintiff Mark D. Sievers, an inmate of the Florida Department of Corrections (FDC), initiated this case by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1). The Court granted his request to proceed as a pauper (Doc. 4) and directed him to file an amended complaint (Doc. 5), explaining in part as follows:

> [Sievers] does not describe how each defendant violated his constitutional rights, but rather he seeks to hold all defendants jointly liable for the alleged "prolonged denial of the medically necessary, life affirming prescribed treatment for sleep apnea"; and it appears he seeks to proceed against some defendants solely on a theory of vicarious liability without alleging a causal connection between any individual supervisor's actions and an alleged constitutional violation (i.e., the CEO of Centurion, the Chief Health Officer, Directors, Administrators, the Warden, and the Secretary of the FDC).

See Order (Doc. 5) at 4–5.

Before the Court for screening is Sievers's Amended Complaint (Doc. 6; Amended Complaint). In his Amended Complaint, Sievers names eight Defendants: (1) Ricky Dixon, Secretary of the FDC; (2) Barry Reddish, Warden of Union Correctional Institution (UCI); (3) K. Tomlinson, Assistant Warden and ADA coordinator at UCI; (4) Dr. Verona, Regional Medical Director (RMD) for Centurion; (5) Dr. Asbelti Llorens, Chief Health Officer and site Medical Director for Centurion; (6) Jessica Putney, Nurse Practitioner for Centurion; (7) Stephanie Alvarez, Health Services Administrator for Centurion; and (8) Eve Gilbert, Director of Nursing for Centurion. See Amended Complaint at 3–5.

Sievers alleges all Defendants violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs. Id. at 5, 21–22. He explains that he was admitted to UCI in 2020 with a VPAP machine, which he was prescribed to treat his diagnosed sleep apnea. Id. at 9. Between 2020 and 2023, the UCI medical department provided Sievers the equipment needed to operate and maintain his VPAP machine, including replacement tubing, water, and a mask. Id. However, in September 2023, his machine stopped working. Id. After submitting multiple requests for a new one, Sievers received a replacement machine on January 31, 2024, but it came without a new mask. Id. For nearly one year, he submitted sick-call requests and grievances for a

mask.[1] Id. When he finally received a mask on January 14, 2025, the mask was too big, so it "would not seal." Id. He did not receive a proper-fitting mask until July 23, 2025. Id. Sievers asserts that the "prolonged denial of the medically necessary, life affirming prescribed treatment for sleep apnea" negatively impacted his health in numerous ways. Id. at 20–21.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B); 1915A. "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Cent. State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims

---

[1] In a grievance Sievers provides with his Amended Complaint, he acknowledges that he had a mask to use, but it was two years old and "worn out." See Doc. 6-1 at 13.

'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id. As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[2] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (original alteration omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]"which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. In the absence of well-pled facts suggesting a

federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the Amended Complaint, the Court must read Sievers's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). Moreover, under Eleventh Circuit precedent, to prevail in a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397,

401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[T]he deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. For decades, the Eleventh Circuit described that "high bar" inconsistently as a "more than mere negligence" or "more than gross negligence standard." See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate

7

indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." (internal quotations omitted)); see also Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024). However, in 2024, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in the criminal law. See Wade, 106 F.4th at 1253. Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Id. at 1262 (enumeration and emphasis omitted).[3]

---

[3] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

The law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); see also Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Indeed, the Eleventh Circuit recently emphasized that the subjective recklessness standard requires a plaintiff to show a prison official had "more than a generalized or abstract knowledge" of a risk. See McClinton v. Warden, Baldwin State Prison, --- F.4th ---, 2026 WL 1002166, at *5 (11th Cir. Apr. 14, 2026). "Put simply, a constitutional violation occurs only when prison officials act 'consciously' such that their acts or omissions knowingly have the effect of inflicting a punishment." Id. at *5, 7 (holding that prison officials were entitled to qualified immunity because, even though some were aware of a "risk in the abstract," the plaintiffs' arguments "invoke[d] a negligence standard, premised on a violation of a duty owed to [their son]," who was killed by a known gang member).

The law also is well established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott,

9

610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[4] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[5] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957–58.

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

The requisite causal connection is not established merely by filing a grievance with a supervisory official. See Jones v. Eckloff, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the

---

[4] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).

[5] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied.").

Similarly, where a claim of deliberate indifference to a serious medical need is brought against a private contractor based on its functional equivalence to a government entity, liability under § 1983 cannot be based on a theory of respondeat superior. Craig, 643 F.3d at 1310. Instead, the plaintiff must show that the entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

Sievers's Amended Complaint suffers from the same deficiencies as his original Complaint and is due to be dismissed for his failure to state a claim for relief. First, despite the Court previously advising Sievers that he cannot proceed under § 1983 against supervisory officials on a theory of respondeat superior, see Order (Doc. 5) at 4, he again seeks to proceed against some Defendants based solely on such a theory, including Defendants Dixon, Reddish, and Llorens. As to these Defendants, Sievers explains the basis of his claims as follows: (1) Defendant Dixon did not approve his grievances, two of which he submitted near or after the date he received a proper-fitting mask (July 23, 2025);[6] (2) Defendant Reddish, who was responsible for the day-to-

---

[6] It appears Sievers mentions the grievances he submitted after he had already received a new mask to demonstrate he exhausted his administrative remedies before

11

day operations of the prison, received two grievances from Sievers about the issue, one of which he submitted after July 23, 2025; and (3) Defendant Llorens, who is responsible for overseeing nurses, denied two of Sievers's grievances, one of which he submitted after July 23, 2025. See Doc. 6 at 16, 18.

Even if Sievers had alleged an FDC or Centurion employee had been deliberately indifferent to his serious medical needs—which he does not— the mere filing of a grievance with these supervisory officials is insufficient to demonstrate "an affirmative causal connection between [their] acts or omissions and the alleged constitutional deprivation." See Zatler, 802 F.2d at 401. Insofar as Sievers alleges that these and other Defendants denied him due process in the grievance procedure, such allegations fail to state a claim because inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." Moore v. McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014)[7] (citing Bingham, 654 F.3d at 1177; Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); see also Charriez v. Sec'y, Fla. Dep't of

―――――――――――

bringing this action. The events relevant to whether Sievers states a plausible deliberate indifference claim are those that occurred before his request for a new mask was satisfied.

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges [b]ecause the prison grievance procedure does not create a protected liberty interest"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures").

As to the remaining Defendants (Tomlinson, Verona, Putney, Alvarez, and Gilbert), there are two relevant timeframes, each implicating acts or omissions of different Defendants: between September 20, 2023, and January 31, 2024 (when Sievers was without a functioning VPAP machine); and between February 1, 2024, and July 23, 2025 (when he was without a proper-fitting mask, although he had a working machine with a "worn out" mask or one that would not properly seal).[8]

As to the first timeframe, Sievers states the basis of his claims as follows: (1) Defendant Putney, who is responsible for healthcare at UCI, was notified

---

[8] For purposes of this Order, the Court accepts without deciding that Sievers had an objectively serious medical need when he was without his VPAP machine and a proper-fitting mask.

of Sievers's need for a replacement machine through one grievance and at two quarterly ADA meetings; (2) Defendant Alvarez received multiple communications (from Sievers, his family, and his postconviction counsel) between September 2023 and November 2023 regarding his need for a replacement machine; and (3) and Defendant Gilbert "had contact with [Sievers] and his family" in December 2023 regarding his need for a replacement machine. See Doc. 6 at 18–19.

As to the second timeframe, Sievers states the basis of his claims as follows: (1) Defendant Tomlinson received two grievances from Sievers, one of which he submitted after July 23, 2025, and Tomlinson, as the coordinator of quarterly ADA meetings, was present at a July 16, 2025 meeting at which Sievers discussed his medical equipment needs; and (2) Defendant Verona, who was responsible for authorizing medical equipment orders, delayed approving the request for a new mask. Id. at 16–17.

**September 2023–January 2024**

Four Defendants knew that Sievers's VPAP machine stopped working in September 2023: Putney, Alvarez, Gilbert, and Verona. As to these Defendants, Sievers's allegations do not go beyond establishing that they knew he needed medical supplies. He does not allege facts permitting the reasonable inference that they subjectively knew their own acts or omissions caused a

substantial risk of serious harm or acted unreasonably in response to a known risk.

First, Sievers alleges that Defendant Putney was on notice of his problem through a sick-call request he submitted on September 20, 2023. Id. at 18. But Sievers acknowledges that a nurse (who is not a Defendant) told him on September 20, 2023, his machine "was being ordered and expedited." Id. at 12. According to Sievers, a different nurse told him on September 23, 2023, that "there was nothing in the system about [him] needing a [new machine]" and that Sievers should contact Defendants Putney and Alvarez. Id. at 12–13. To the extent there was a three-day delay in submitting a request for approval of a new VPAP machine, Sievers does not allege the delay was attributable to Defendant Putney (or Defendant Alvarez, whom Sievers was told was ordering the machine). See id. at 12.

Sievers also asserts that Defendant Putney was on notice of his medical need because she was present at two ADA meetings—in October 2023 and January 2024—when he discussed that his VPAP machine had broken, and he was waiting for a new one. Id. at 18.[9] He claims someone asked him at the

---

[9] Sievers mentions in one section of his Amended Complaint that Defendant Llorens may have been at the October 2023 ADA meeting, see Doc. 6 at 13, but he does not repeat that allegation in setting forth the factual basis for his claim against Defendant Llorens, id. at 18. To the extent Defendant Llorens was present at the October meeting, Sievers's claim against Llorens fails for the same reason his claim against Defendant Putney fails.

October 2023 meeting whether he had received his machine yet, telling him it had been "approved and ordered." Id. at 13. Even if Defendant Putney knew—by virtue of her presence at the meeting—that Sievers had not received a replacement machine yet, she also would have known or heard that the machine had been ordered. See id. In other words, Sievers alleges no facts suggesting Defendant Putney was ignoring or delaying his need for medical equipment. Sievers further asserts that someone told him at the January 2024 meeting that his replacement VPAP machine had been received on November 2, 2023, but was returned. Id. To the extent the machine was received but returned in November, Sievers does not allege Defendant Putney was responsible.

Second, Sievers's mother emailed Defendant Alvarez on October 1, 2023, and Sievers's postconviction counsel contacted Defendant Alvarez by telephone on November 2, 2023. See Doc. 6-1 at 27, 29. Defendant Alvarez responded directly to Sievers on October 2, 2023, advising that "the order ha[d] been submitted to the regional doctor for approval," and, after speaking with postconviction counsel, Defendant Alvarez noted in Sievers's medical chart that "[the machine] has been ordered [sic] awaiting the arrival." Doc. 6 at 19; Doc. 6-1 at 29.

Third, Sievers's stepmother emailed Defendant Gilbert on December 5, 2023, explaining that Sievers still had not received a replacement machine. Doc. 6-1 at 31, 33. Defendant Gilbert responded to her on December 10, 2023, advising that the RMD (Defendant Verona) had approved the order, and a Centurion employee had "called about [the order] many times." Id. at 33. Defendant Gilbert made a note in Sievers's medical record about the communication. Id. at 35.

Sievers received a replacement machine on January 31, 2024. See Doc. 6 at 13. Accepting that a replacement machine was ordered and approved shortly after Sievers requested one, Defendants Putney, Alvarez, Gilbert, and Verona cannot be said to have denied him necessary medical supplies. Although his replacement machine was delayed for a few months, Sievers alleges no facts indicating Defendants Putney, Alvarez, Gilbert, or Verona caused the delay or, if so, "consciously" knew that their acts or omissions "ha[d] the effect of inflicting a punishment." McClinton, 2026 WL 1002166, at *5. Sievers's allegations against these Defendants "invoke[] a negligence standard," which is insufficient to state a plausible deliberate indifference claim. See id. at *7.

**February 2024–July 2025**

Not including those to whom Sievers merely submitted grievances (Defendants Dixon, Reddish, and Llorens), Sievers attributes the lengthy delay

17

in receiving a proper-fitting mask to Defendants Tomlinson and Verona. First, Sievers asserts Defendant Tomlinson denied his August 2024 medical grievance in which he complained he had been without a proper-fitting mask for about six months. See Doc. 6 at 16. Even if Sievers's grievance put Defendant Tomlinson on notice that Sievers had a serious medical need, Defendant Tomlinson investigated the issue and discovered that Sievers's "supplies ha[d] been approved and ordered" and would be "issued to [him]" upon receipt by the medical department. See Doc. 6-1 at 14.[10] The denial of the grievance was not tantamount to Defendant Tomlinson (or Defendant Llorens, who co-signed the grievance response) ignoring Sievers's serious medical needs. Sievers complains that he did not receive his replacement mask for nearly a year after that grievance response, but he does not allege Defendant Tomlinson was aware of that delay until Sievers mentioned it at the July 16, 2025 quarterly meeting. See Doc. 6 at 17. Sievers received a new mask shortly after that meeting, which, if anything, suggests the opposite of deliberate indifference by Defendant Tomlinson.

Second, Sievers implies Defendant Verona unnecessarily prolonged his receipt of a proper-fitting mask because he was told in two grievance responses—in February 2025 and June 2025—that medical was "waiting on

---

[10] Defendant Llorens also signed the grievance response.

approval from the RMD." Id. See also Doc. 6-1 at 21, 23. Without more, these allegations do not permit the reasonable inference that Defendant Verona consciously delayed the order to inflict punishment. Moreover, according to a grievance Sievers submitted on July 22, 2025, it appears that the delay was attributable, at least in part, to a supply chain issue: Sievers noted in his grievance that someone told him "[V]PAP supplies all over the country [were] delayed." See Doc. 6-1 at 6.

The reason for the unfortunately long delay in Sievers receiving a proper-fitting mask for his VPAP machine is unclear, but the facts he alleges do not permit the reasonable inference any named Defendant consciously disregarded a known risk of harm to him. To the extent the problem was attributable to a supply chain issue, oversight, or lack of due care, Sievers "invokes a negligence standard." McClinton, 2026 WL 1002166, at *7. To the extent the delay was attributable to the process by which Centurion approves medical supplies for inmates, Sievers does not allege that Centurion "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." See Craig, 643 F.3d at 1310.

Therefore, it is now **ORDERED:**

1.      This case is **DISMISSED without prejudice**.

2.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of April, 2026.

MARCIA MORALES HOWARD
United States District Judge

Jax-6
c:
Mark D. Sievers